JESSICA R. PERRY (STATE BAR NO. 209321)
ANNIE PRASAD VADILLO (STATE BAR NO. 318440)
JILLIAN V. KALTNER (STATE BAR NO. 324398)
jperry@orrick.com
avadillo@orrick.com
jkaltner@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:      +1 650 614 7401

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD K. SHRUHAN, JR. an individual, | Case No. |
| Plaintiff, | **DEFENDANT APPLE INC.'S NOTICE OF REMOVAL** |
| v. | |
| APPLE INC., a Delaware corporation, and DOES 1-10, | |
| Defendants. | |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DONALD SHRUHAN AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Apple Inc. files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(a) and 1446 to effect the removal of the above-captioned action, which was commenced in the Superior Court of the State of California in and for the County of Santa Clara, and states that the removal is proper for the reasons stated below.

## BACKGROUND

1. On September 22, 2022, Plaintiff Donald Shruhan filed a Complaint in the Superior Court of California for the County of Santa Clara, entitled "*Donald K. Shruhan, Jr. v. Apple Inc.*," Case No. T22-1970 (the "State Action"). The allegations of the Complaint in the State Action are incorporated by reference in this Notice of Removal without necessarily admitting any of them. In compliance with 28 U.S.C. § 1446(a), attached hereto as **Exhibit A** is a copy of the Complaint as filed, which constitutes the entirety of the record in the State Action.

2. The Complaint asserts three causes of action: (1) age discrimination, (2) failure to prevent discrimination, and (3) violation of the Unfair Business Practices act.

3. The Complaint only named Apple Inc. as defendant to the State Action. Apple Inc. is a resident of Santa Clara County, California, where it maintains its principal place of business.

4. As of September 27, 2022, the date this Notice of Removal was filed, Defendant Apple Inc. has not been served with the Complaint in the State Action.

5. On September 26, 2022, conceding that jurisdiction is proper in this District Court, Plaintiff filed an identical complaint to the State Action in this Court ("the Federal Action"). As of September 27, 2022, the date this Notice of Removal was filed, Defendant Apple Inc. has not been served with the Complaint in the Federal Action. Out of an abundance of caution, Defendant removes the State Action to prevent identical pending state and federal actions.

6. The Court has jurisdiction of this matter under 28 U.S.C. § 1332(a) because there is diversity between Plaintiff and Defendant and the amount in controversy exceeds $75,000.

DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

**DIVERSITY OF CITIZENSHIP**

7.      Plaintiff's Citizenship. Plaintiff is an individual who at all times relevant to the allegations made in the Complaint was a resident of Pima County, Arizona. Complaint ¶ 21.

8.      Defendant's Citizenship. Defendant is a corporation organized and existing under the laws of Delaware, which during the relevant time period had a principal place of business at One Infinite Loop, Cupertino, CA and now has a principal place of business at One Apple Park Way, Cupertino, CA 95014. For diversity purposes, a business is a "citizen" of the place in which it is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

9.      Doe Defendants' Citizenship. The citizenship of fictitious defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. 28 U.S.C. § 1441(a); *Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989), cert. denied, 493 U.S. 1076 (1990).

10.     The Forum Defendant Rule Does Not Apply. To the extent Plaintiff cites 28 U.S.C. § 1441(b)(2) to argue that the State Action may not be removed because certain of "the parties in interest properly joined and served as defendants [are] citizen[s] of the state in which such action is brought," that argument fails because Defendant has not been served with the Complaint. Courts in this district have repeatedly held that "a defendant may remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim." *Sherman v. Haynes & Boone*, No. 14-CV-01064-PSG, 2014 WL 4211118, at *1 & n.8 (N.D. Cal. Aug. 22, 2014) (citing cases); *see also Regal Stone Ltd. v. Longs Drug Stores Cal.*, LLC, 881 F. Supp. 2d 1123, 1127 (N.D. Cal. 2012) (holding that courts in this district "hold that the clear and unambiguous language of the statute only prohibits removal after a properly joined forum defendant has been served"). As Judge Koh recently recognized:

> By its plain language, 28 U.S.C. § 1441(b)(2) permits an in-state defendant who has not been both joined and served to remove a case to federal court on the basis of diversity jurisdiction. Here, it is undisputed that Defendant[] removed Plaintiff's Complaint before

DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

1
2

any Defendants were served. Thus, Defendant[s] notice of removal
was not procedurally improper, and remand is not warranted.

3

*Monfort v. Adomani, Inc.*, No. 18-CV-05211-LHK, 2019 WL 131842, at * 4 (N.D. Cal. Jan. 9,

4

2019); *see also Global Industrial Investment Ltd., v. Andrew Chung,* No. 19-CV-07670-LHK,

5

2020 WL 2027374, at *2 (holding the same in single plaintiff case). The same analysis applies

6

here and removal is proper.

7

**AMOUNT IN CONTROVERSY**

8

11.    In considering the amount in controversy, what matters is the amount put in

9

controversy by plaintiff's complaint, not what amount the defendant will actually owe (if

10

anything). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not

11

a prospective assessment of defendant's liability." *Lewis v. Verizon Comm., Inc.*, 627 F.3d 395,

12

400 (9th Cir. 2010).

13

12.    The alleged amount in controversy in this action exceeds, in the aggregate,

14

$75,000, exclusive of interest and costs. Defendant denies Plaintiff's claims in their entirety but

15

provides the following analysis of potential damages (without admitting liability) based on the

16

allegations in Plaintiff's Complaint in order to demonstrate that Plaintiff's Complaint puts a

17

sufficient amount "in controversy" to warrant removal under 28 U.S.C. § 1332(a). Though the

18

Complaint does not seek a specific dollar amount of damages, it requests "compensatory,

19

economic, general, and special damages" in an amount to be determined at trial, "punitive

20

damages . . . to punish and make an example of Defendant," civil penalties for violations of the

21

UCL and B&P § 17500, costs and expenses, attorneys' fees, and pre-judgement interest. **Exhibit**

22

**A**, Complaint at Prayer for Relief, ¶ 1-9.

23

13.    When the amount in controversy is not readily apparent from a complaint, "the

24

court may consider facts in the removal petition" to determine the potential damages at issue.

25

*Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (*quoting Singer v. State Farm Mut.*

26

*Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). The Court should also include requests for attorneys'

27

fees in determining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

28

1155-56 (9th Cir. 1998).  The burden is not "daunting," and "a removing defendant is not

obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (citation omitted); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11–1477 AHM (JCx), 2011 WL 1790123, at *5 (C.D. Cal. May 9, 2011); *Deehan v. Amerigas Ptnrs., L.P.*, 2008 WL 4104475 , at *2 (S.D. Cal. Sept. 2, 2008) ("Defendant is not required to prove Plaintiff's case for him").[1] The preponderance burden is satisfied where the defendant's calculations are conservative, made in good faith, and based on evidence wherever possible. *Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009). Thus, Defendant is only required to establish that it is more likely than not that the amount in controversy exceeds $75,000.

14.    The potential damages, penalties and restitution Plaintiff seeks in this State Action plainly exceed $75,000, exclusive of interest and costs. The Complaint seeks damages for RSUs which Plaintiff values at between $800,000 and $850,000. Exhibit A, ¶ 29 ("The total number of shares that [Plaintiff] should have received in 2019 was between 14,977 and 14,097 shares at $56.75/share, with a value at the time of between $800,000 and $850,000.") *Id.* In addition to compensatory and economic damages, Plaintiff seeks punitive damages and attorneys' fees and costs incurred by Plaintiff pursuant to the FEHA. *Id.* at Prayer for Relief, ¶ 1-9.

**NO BASES FOR REJECTING OR DECLINING JURISDICTION**

15.    There are no bases for this Court to reject or decline jurisdiction as set out 28 U.S.C. § 1441(b)(2).

**VENUE**

16.    Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 1441(a) and 1446(a). This action was originally brought in the Superior Court of the State of California, County of Santa Clara, which is embraced by the Northern District of California.

**NOTICE OF REMOVAL**

17.    This Notice of Removal shall be served promptly on Plaintiff and filed with the

---

[1] Nothing in this Notice is an admission of liability by Defendant. Defendant denies all of Plaintiff's allegations, affirmatively denies it is liable for any alleged conduct, denies in the strongest possible terms that it discriminated against or wrongfully treated Plaintiff, and denies that Plaintiff has been damaged at all.

DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

1   Clerk of the Superior Court of the State of California in and for the County of Santa Clara.

2       WHEREFORE, Defendant prays that this civil action be removed from the Superior Court

3   of the State of California, County of Santa Clara, to the United States District Court for the

4   Northern District of California.

5

6   Dated: September 27, 2022            JESSICA R. PERRY

7                                  ANNIE PRASAD VADILLO
                                 JILLIAN V. KALTNER

8                                  ORRICK, HERRINGTON & SUTCLIFFE LLP

9

10                    By: _____

11                                JESSICA R. PERRY
                               Attorneys for Defendant
                               APPLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

# EXHIBIT A

1  Jessica Thompson, *pro hac vice to be filed*
2  Stephanie Verdoia, *pro hac vice to be filed*
   HAGENS BERMAN SOBOL SHAPIRO LLP
3  1301 Second Avenue, Suite 2000
   Seattle, Washington 98101
4  Telephone: (206) 268-9370
   E-mail:  jessicat@hbsslaw.com
5
6  Cecilia N. Brennan, Esq. (SBN 243954)
   HKM EMPLOYMENT ATTORNEYS LLP
7  401 West A Street, Suite 200 (#77)
   San Diego, California 92101
8  Tel/Fax: (619) 717-6410
   Email:  cbrennan@hkm.com
9
10 *Attorneys for Plaintiff*
   DONALD K.  SHRUHAN, JR. an individual
11
12           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
13               **FOR THE COUNTY OF SANTA CLARA**
14                    **UNLIMITED JURISDICTION**
15

| | |
|---|---|
| DONALD K. SHRUHAN, JR. an individual, | Case No. |
| Plaintiff, | 1. **AGE DISCRIMINATION;** |
| | 2. **FAILURE TO PREVENT** |
| v. | **DISCRIMINATION;** |
| | 3. **VIOLATION OF THE UNFAIR** |
| APPLE INC., a Delaware corporation, and | **BUSINESS PRACTICES ACT** |
| DOES 1-10, | |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

COMES NOW, Plaintiff, DONALD K. SHRUHAN, JR. an individual, ("Plaintiff" or "Mr. Shruhan") for Causes of Action against Defendants, APPLE INC, a Delaware corporation ("Apple" or "Defendant") and DOES 1 through 10, inclusive, and each of them, hereby files this Complaint for Damages and Injunctive Relief, as follows:

## I.   INTRODUCTION

1.      Ageism is a stubborn paradox of the modern workplace—highly trained, talented, ambitious workers are shunted to the margins based on ageist stereotypes that they are slowing down, are not innovative, or are likely to retire soon. These biases persist even though older workers take fewer sick days,[1] have better problem-solving skills,[2] are *more* innovative,[3] and are more likely than younger workers to be highly satisfied in their work.[4]

2.      Federal and state legislatures have passed antidiscrimination laws after decades of hard-fought advocacy and civil rights leadership. These laws exist to protect all California workers. And private lawsuits like this one are one of their most important enforcement mechanisms.

3.      But while California's laws continue to evolve to meet the modern challenges of age bias and discrimination, the data repeatedly show that antidiscrimination laws are not working as intended. In 2018, the Equal Employment Opportunity Commission issued a special report on age discrimination against older Americans. It concluded that even though 50 years had passed since Congress outlawed the practice, "age discrimination remains a significant and costly problem for workers, their families and our economy."[5] Victoria Lipnic, the EEOC's acting chair at the time, went further: "Like harassment, everyone

---

[1]Stephen Miller, *Misconceptions About Age and Work Absence Challenged*, SHRM (Jan. 23, 2014), *available at*, https://www.shrm.org/resourcesandtools/hr-topics/benefits/pages/age-absence-misconceptions.aspx

[2] Fredda Blanchard-Fields et al, *Age Differences in Everyday Problem-Solving Effectiveness: Older Adults Select More Effective Strategies for Interpersonal Problems*, *The Journals of Gerontology: Series B*, Volume 62, Issue 1, January 2007, Pages P61–P64, https://doi.org/10.1093/geronb/62.1.P61

[3] Benjamin F. Jones, *Age and Great Invention*, Working Paper 11359, Nat. Bureau of Economic Research (May 2005), *available at* http://www.nber.org/papers/w11359

[4] Frances Burks, *What Is the Relationship Between Job Satisfaction & Age?*, *available at* https://smallbusiness.chron.com/relationship-between-job-satisfaction-age-12618.html

[5] *The State of Age Discrimination and Older Workers in the U.S. 50 Years After the Age Discrimination in Employment Act (ADEA)*, EEOC Newsroom (June 2018), available at https://www.eeoc.gov/reports/state-age-discrimination-and-older-workers-us-50-years-after-age-discrimination-employment

knows it happens every day to workers in all kinds of jobs, but few speak up. It's an open secret."[6]

4.      Also in 2018, a ProPublica and Urban Institute study found that **more than half** of older U.S. workers were pushed out of longtime jobs before they choose to retire, suffering irreversible financial damage.[7] The analysis showed that only one in 10 of these workers ever again earned as much as they did before their employment setbacks. Even years afterward, the household incomes of over half of those who experienced such work disruptions remained substantially below those of workers who do not. "This isn't how most people think they're going to finish out their work lives," said Richard Johnson, the Urban Institute economist who worked on the analysis. "For the majority of older Americans, working after 50 is considerably riskier and more turbulent than we previously thought."

5.      And the problem is worsening: Nearly 80% of older workers now say they've seen or experienced age discrimination in the workplace, according to the 2021 survey by AARP.[8] That was the highest share since the group began asking the question in 2003.

6.      California's tech industry has grown up (and thrived) under California's progressive antidiscrimination statutory regime. And yet the industry is repeatedly one of the worst offenders when it comes to age bias. Facebook CEO Mark Zuckerberg famously declared in 2007 that "Young people are just smarter."[9] In 2019, Google agreed to pay $11

---

[6] *EEOC Acting Chair Lipnic Releases Report on The State Of Older Workers And Age Discrimination 50 Years After The ADEA*, EEOC Newsroom (June 26, 2018), *available at* https://www.eeoc.gov/newsroom/eeoc-acting-chair-lipnic-releases-report-state-older-workers-and-age-discrimination-50

[7] Peter Gosselin, *If You're Over 50, Chances Are The Decision to Leave a Job Won't be Yours* Pro Publica, (Dec. 28, 2018), *available at* https://www.propublica.org/article/older-workers-united-states-pushed-out-of-work-forced-retirement

[8] Rebecca Perron, *Age Discrimination Continues to Hold Older Workers Back*, AARP Research, *available at*, https://www.aarp.org/research/topics/economics/info-2021/older-workers-new-skills-covid-19-pandemic.html

[9] Margaret Kane, *Say what? 'Young people are just smarter'*, CNET (March 28, 2017) available at https://www.cnet.com/culture/say-what-young-people-are-just-smarter/

million to settle the claims of more than 200 job applicants who said they were discriminated against because of their age.[10]

      7.    In 2020, an EEOC investigation into IBM "uncovered top-down messaging from (IBM's) highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for" younger ones.[11] One IBM executive referred to older workers as "dinobabies" and stated his intent to "accelerate change by inviting the 'dinobabies' (new species) to leave"[12]

      8.    Silicon valley, in particular, is obsessed with youth.[13] A 2015 Payscale survey found that while the median U.S. worker is 42, at Silicon Valley companies, the median employee is more likely to be 31 (Apple), 30 (Google, Tesla), 29 (Facebook, LinkedIn), or younger.[14] And in a survey of US startup founders polled by venture-capital firm First Round Capital, 37% said *age is the strongest investor bias against founders*, while 28% cited gender and 26% cited race. Founders participating in First Round's survey said ageism in tech starts, on average, at the age of 46—and more than a quarter of the founders said the bias affects entrepreneurs as young as 36.[15]

---

[10] Kathy Gurchiek, *Google Ends Age-Discrimination Suit with $11 Million Settlement*, SHRM (July 24, 2019), available at https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-effectiveness/pages/google-ends-age-discrimination-suit-with-11-million-settlement.aspx

[11] Peter Gosselin, The U.S. Equal Employment Opportunity Commission Confirms a Pattern of Age Discrimination at IBM, Pro Publica, https://www.propublica.org/article/the-u-s-equal-employment-opportunity-commission-confirms-a-pattern-of-age-discrimination-at-ibm

[12] *Lohnn v. IBM*, 1:21-cv-06379-LJL, Plaintiff's Motion for Summary Judgment, Dkt. No. 58 (S.D.N.Y. Feb. 11, 2022).

[13] https://www.newstatesman.com/science-tech/2014/03/brutal-ageism-tech ("[I]t has fallen to Matarasso [a cosmetic surgeon] to make older workers look like they still belong at the office. 'It's really morphed into, 'Hey I'm forty years old and I have to get in front of a board of fresh-faced kids. I can't look like I have a wife and two-point-five kinds and a mortgage.''") *See also*, https://www.usatoday.com/story/tech/columnist/2016/09/15/silicon-valleys-not-so-secret-bias-ageism/90120616/ ; https://www.fastcompany.com/3054204/is-ageism-in-tech-an-under-the-radar-diversity-issue;

[14] https://www.bloomberg.com/news/articles/2016-09-08/silicon-valley-s-job-hungry-say-we-re-not-to-old-for-this;

[15] https://qz.com/work/1514739/startup-leaders-say-age-bias-is-rampant-against-founders-as-young-as-36/

9.      Here, Plaintiff—a 67-year-old seasoned Apple employee—has been a victim of this deeply-rooted Silicon Valley ageism at the hands of Apple.

## II.      JURISDICTION AND VENUE

10.      Pursuant to Article VI, Section 10 of the California Constitution, subject matter jurisdiction is proper in the Superior Court of California, County of Santa Clara, State of California.

11.      Pursuant to Code of Civil Procedure § 395, venue is proper in the Superior Court of California for the County of Santa Clara, because this is where Plaintiff is employed and where the wrongful misconduct alleged herein occurred.

12.      On or about September 22, 2022 the California Department of Fair Employment and Housing ("DFEH") provided Plaintiff with a right-to-sue letter. Accordingly, this action has been filed within all applicable statutory time periods.

## III.      PARTIES

13.      Plaintiff Donald K. Shruhan, Jr. ("Plaintiff" and/or "Mr. Shruhan") is an individual who at all times relevant to the allegations made in this Complaint has maintained a residence in Pima County, Arizona.

14.      Plaintiff is informed and believes that Defendant Apple Inc. ("Defendant" and/or "Apple") is, and at all times herein mentioned was, a Delaware corporation qualified to and doing business within the State of California, having a place of business either at One Infinite Loop, Cupertino, CA or at One Apple Park Way, Cupertino, CA 95014.

15.      At all times herein, Defendant was and is an employer under the meaning of Government Code § 12926(d). Defendant has over 5 employees.

16.      Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated herein as a fictitiously named defendant is, in some manner, responsible for the events happening herein referred to, either contractually or tortuously, and caused the damage to Plaintiff as herein alleged, and

COMPLAINT FOR DAMAGES

1   Plaintiff will amend this Complaint to allege such true names and capacities when the same

2   are ascertained.

3       17.    Plaintiff is informed and believes, and thereon alleges, that at all times

4   relevant and mentioned herein, Defendants, including DOES 1 through 10, inclusive, and

5   each of them, were the agents, servants, employees and/or joint venturers of their co-

6   Defendants, and each of them, was acting within the course, scope and authority of said

7   agency, employment and/or venture, and that each and every Defendant, as aforesaid, when

8   acting as a principal, was negligent in the selection and hiring, retention, training and

9   supervision of each and every other Defendant as an agent, employee and/or joint venturer.

10   

**IV.    FACTUAL ALLEGATIONS**

11   **A.    Donald K. Shruhan, Jr. is an exemplary Apple employee.**

12       18.    Plaintiff commenced employment with Apple in 2008, and currently serves as

13   a Director in Apple's Intellectual Property Enforcement unit. He came to Apple in 2008

14   with decades of investigative experience at the U.S. Customs Service/U.S. Homeland

15   Security Investigations and Pfizer Inc. Plaintiff was Apple's first Senior Director for Global

16   Security in the Asia-Pacific ("APAC") region, where he developed investigative programs

17   to combat security leaks, mass production security leaks, fraud and major theft in the

18   region.

19       19.    Plaintiff split his time as Senior Director between the Global Security and the

20   Intellectual Property Enforcement (IPE) teams while in the APAC region. In IPE, Plaintiff

21   managed all enforcement activities relating to counterfeiting in the region. As one of

22   Plaintiff's supervisors Tom Moyer ("Mr. Moyer") described in Plaintiff's 2018 review, the

23   APAC region is "one of Apple's most important and challenging regions," and Plaintiff

24   was successfully leading it.

25       20.    Plaintiff's supervisor noted that that the IP Enforcement APAC team had

26   "some of our biggest ever successes in FY18 thank[s] to Don. . . ."

27       21.    Plaintiff's performance is likewise unequivocally positive as evidenced by

28   feedback from supervisors and peers reflected in his reviews from 2017-2021. Plaintiff

"achieved" or "exceeded" expectations for each yearly review from both supervisors. Below are some excerpts from these yearly reviews:

- "Don's network and experience is irreplaceable." (2017 year-end review)

- ". . . I find Don to be the singularly most focused investigator we have on our staff." (2018 year-end review)

- "As always, Don brings unmatched expertise and resourcefulness in getting things done throughout APAC, the US and internationally, along with a tireless work ethic and a collaborative, enthusiastic nature." (2018 year-end review)

- "Don continues to be Apple's point expert for regional fraud." (2019 year-end review)

- "He has the single largest portfolio of APAC legal contacts in Asia - perhaps in the security industry." (2019 year-end review)

- "IP Enforcement APAC has had some of our biggest ever successes in FY19 in APAC and globally thanks to Don. . . ." (2019 year-end review)

22.     Based on Apple's manager compensation guidelines, Restricted Stock Units ("RSUs") are given to "retain key employees" in lead positions. Apple's pattern and practice is to award RSUs to its employees. Each year, Apple HR issues a bracket for managers to guide their determination of RSU awards based on performance, with higher performers to be awarded RSUs at the higher end of the bracket, and lower performers at the lower end, etc.

23.     Other than in 2019, Plaintiff received RSU awards consistent with this policy and practice. As a measure of this excellence, Plaintiff has been awarded merit increases and RSUs along with these reviews in every year except 2019. Plaintiff's direct supervisors emphasized the importance of retaining him when awarding RSUs.

24.     Apple notified Plaintiff in 2018 that it would not renew his expat package, and therefore he would be leaving the APAC region by 2020. Once his supervisor on the IPE team learned this, he approached Plaintiff and asked if he would consider working exclusively for the IPE team. Plaintiff told his supervisor that he would consider the move

on the conditions that he would: be permitted to work from Arizona; be at least a Director-level employee; and have a global role as a mentor to the IPE team.

25.    Plaintiff's IPE supervisor was thrilled that Plaintiff would consider taking this new role, and notified Apple's Vice President & Chief IP Counsel, who worked with Human Resources to begin the transition process.

26.    By the time Plaintiff left the APAC region in 2020, he had personally developed best-in-class programs in Global Security and IP enforcement. According to Mr. Moyer, Plaintiff had saved Apple hundreds of millions of dollars during this period.

**B.    Donald K. Shruhan, Jr. received zero Restricted Stock Units in spite of excellent performance in 2019.**

27.    On September 26, 2019, Mr. Moyer gave Plaintiff one of his many excellent reviews. However, by the end of the review he informed Plaintiff that the Company was not awarding him RSUs. Plaintiff is unaware of any other Senior Director who met or exceeded expectations but did not receive any RSUs. He was 64 years old at the time.

28.    The two other Senior Directors in Plaintiff's organization, Legal Global Security, received RSUs commensurate with their performance. Each was significantly younger than Plaintiff.

29.    In the two preceding fiscal years when Plaintiff received similar excellent reviews, he was granted RSUs valued at $850,000 and $800,000 respectively. The total number of shares that he should have received in 2019 was between 14,977 and 14,097 shares at $56.75/share, with a value at the time of between $800,000 and $850,000.

**C.    Apple confirmed that it declined to award any RSUs or a merit increase because RSUs are designed as an investment in the future.**

30.     Between September and December of 2019, Plaintiff attempted to resolve the matter with his immediate supervisor (Mr. Moyer) and Apple's Human Resources ("HR") department. Mr. Moyer confirmed that he failed to award any RSUs because RSUs are designed as an investment in the future and a retention hook. Mr. Moyer's statement implied that because of Plaintiff's age, Mr. Moyer (1) no longer saw him as part of Apple's

COMPLAINT FOR DAMAGES

future, and (2) no longer saw the need to incentivize Plaintiff's continued employment with Apple because he was nearing retirement age.

31.     On December 11, 2019, Plaintiff brought this matter to the attention of Kate Adams, Apple's General Counsel. Ms. Adams informed Plaintiff that he should try to work it out with HR, but to follow up with her if he couldn't resolve it.

32.     Plaintiff contacted HR and was told that the RSUs were withheld because there was a "clawback" policy regarding RSUs. HR representatives claimed that they performed a detailed "clawback" analysis and compensation review that coincidently found that Plaintiff was entitled to zero RSUs. Plaintiff asked for a copy of the "clawback" policy and was told that there was no written policy. He has also asked for a copy of the compensation review multiple times, but to date has not been provided any documentation supporting this review.

33.     HR was unable to provide any written policy at the time or any calculations reflecting the claimed "compensation review" showing that the discrepancy in compensation for 2019 was exactly equivalent to the full value of the RSUs (thus justifying Mr. Moyer's failure to award RSUs).

34.     Plaintiff continued to discuss the matter with his direct supervisors throughout 2020 and 2021.

**D.     Apple confirmed that Tom Moyer declined to award RSUs for an impermissible age-based reason.**

35.     On or around October 2021, Plaintiff filed an Employee Relations ("ER") complaint alleging age discrimination. Plaintiff explained that in FY2019, as a Senior Director he received an excellent performance review yet was not awarded any RSUs, nor did he receive a merit increase. Plaintiff reported that it was the first time in 11 years that his stock award was not commensurate with his professional achievement.

36.     After another excellent performance review in FY 2021, Plaintiff was advised that his RSU award would again be diminished.

COMPLAINT FOR DAMAGES

37.     In September of 2021, Plaintiff was asked to submit an email indicating his plan for retirement. He had never notified Apple of his intention to retire.

38.     At that time, Plaintiff also learned that Apple HR was seeking his demotion to Individual Contributor 6.

39.     During a February 2022 call with Employee Relations at the conclusion of the investigation, Plaintiff was told that he was not awarded any RSUs in 2019 because Tom Moyer thought he was retiring. This was an age-based assumption on the decision-maker's part, with no basis in fact.

40.     At the time he made this decision, Mr. Moyer knew that Plaintiff was negotiating a transition, not his retirement. Mr. Moyer reviewed and signed Plaintiff's 2019 review which stated, in part, that his co-workers and supervisors looked forward to continuing to work with him in 2019.

41.     When Plaintiff asked Apple's internal investigator if she conducted interviews with Apple's Vice President & Chief IP Counsel (a fact witness with first-hand knowledge of Plaintiff's intentions and Mr. Moyer's awareness of his intentions), she confirmed she failed to do so.

42.     In a follow-up call with Apple Employee Relations, Plaintiff asked why Apple's justification had changed—*i.e.*, why was there was no reference on any "clawback" policy as a justification for this decision. Employee Relations could not answer this question, but did provide an undated copy of a clawback policy. It does not appear that Apple made any effort to comply with the procedure and justifications for this policy in connection with its 2019 decision to award zero RSUs to Plaintiff.

43.     On or around February 23, 2022, after he exhausted all efforts with Apple HR and ER, Plaintiff again contacted Ms. Adams to discuss this issue. He did not receive a response.

44.     In one final attempt to resolve this issue short of litigation, Plaintiff requested a mediation with Apple counsel, which took place on September 6, 2022. The parties did not make progress. And so, regrettably, Plaintiff had no choice but to file this Complaint.

COMPLAINT FOR DAMAGES

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### AGE DISCRIMINATION IN VIOLATION OF FEHA
### (Against All Defendants)

45.    Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

46.    At all times herein mentioned, FEHA, Government Code § 12940 *et seq*. was in full force and effect and was binding against Apple.

47.    Plaintiff was an employee of Apple within the meaning of FEHA.

48.    Apple was at all material times an employer within the meaning of FEHA and as such, barred from discrimination in employment decisions on the basis of age.

49.    Apple and its agents discriminated against Plaintiff on the basis of age in violation of FEHA, Government Code § 12940(a), and Article I of the California Constitution by engaging in the course of conduct more fully set forth in the Factual Allegations above and including, without limitation, failing to award RSUs commensurate with performance and the desire to retain Plaintiff and threatening to demote him based on Plaintiff's advanced age and a discriminatory assumption that he would soon retire.

50.    The discriminatory practices as alleged in the Factual Allegations were approved and ratified by the Company's management, including Tom Moyer and Debbie Rice due to their failure to take action following Plaintiff's repeated complaints outlining with specificity that he had been the victim of age discrimination.

51.    As a direct and proximate result of the Company and its agents' age discrimination against Plaintiff, Plaintiff has suffered: (a) humiliation, serious mental anguish and emotional and physical distress; and (b) loss of past and future earnings and employment benefits and opportunities; all on account of which Plaintiff is entitled to compensatory damages in an amount according to proof.

COMPLAINT FOR DAMAGES

52.     Plaintiff has also incurred, and will continue to incur, necessary and reasonable attorney's fees and costs in order to enforce his rights, which he is entitled to recover under FEHA.

## SECOND CAUSE OF ACTION
## FAILURE TO PREVENT DISCRIMINATION
### (Against All Defendants)

53.     Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

54.     Under FEHA, it is unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring. Cal. Gov. Code § 12940(k)

55.     Although on notice, Defendant, in violation of Cal. Gov. Code § 12940(k), failed to take reasonable steps to protect Plaintiff from the discrimination alleged herein.

56.     Despite Apple's knowledge of the discrimination alleged herein, and the actual knowledge of its agents, Apple allowed the harassment and discrimination of Plaintiff based on his age to continue and ultimately threatened to demote him to Individual Contributor 6 from Director.

57.     As a proximate result of Defendants' unlawful acts, Plaintiff sustained a loss of earnings, fringe benefits, and/or promotions, and suffered emotional distress, humiliation, embarrassment, and the loss of enjoyment of life, manifested by feelings of depression, humiliation, embarrassment, anxiety, nervousness, and other symptoms of stress. Damage amounts are to be determined at trial.

58.     Plaintiff is entitled to damages, reasonable attorneys' fees and costs, and other appropriate relief as determined by this Court.

59.     In doing the acts alleged herein, Defendants acted maliciously and oppressively, with the wrongful intent of injuring Plaintiff, and acted with an improper and evil motive amounting to malice, in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a despicable,

COMPLAINT FOR DAMAGES

deliberate, and intentional manner, Plaintiff is entitled to recover punitive damages in an amount according to proof at trial.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE UNFAIR BUSINESS PRACTICES ACT**
**(Against All Defendants)**

60.     Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

61.     The California Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL" or "B&P"), defines unfair competition to include any "unlawful," "unfair," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200.

62.     Defendants' conduct, as alleged above constitutes unlawful, unfair and/or fraudulent business practices for the reasons set forth above.

As a result of Defendants' unlawful, unfair and fraudulent conduct, Plaintiff suffered emotional distress, humiliation, embarrassment, and the loss of enjoyment of life, manifested by feelings of depression, humiliation, embarrassment, anxiety, nervousness, and other symptoms of stress.

63.     Pursuant to B&P § 17203, Plaintiff seeks declaratory and injunctive relief for Defendants' unlawful, unfair and fraudulent conduct and to recover restitution.

64.     Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs and other aggrieved parties are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

65.     Under B&P § 17203, Plaintiff seeks an order of this Court: (a) enjoining Defendants from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and any act prohibited by B&P § 17200 et seq.; and (b) restoring all monies that may have been acquired by Defendants as a result of such unlawful, unfair or deceptive acts or practices.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.          For emotional distress damages in an amount to be proven at trial;

2.          For compensatory, economic, general, and special damages in amounts to be proven at trial;

3.          For punitive damages in an amount necessary to punish and make an example of Defendants;

4.          For the reasonable value of attorney services and fees, pursuant to applicable statutes, including, but not limited to, FEHA;

5.          For prejudgment interest;

6.          For an order of this Court: (a) enjoining Defendants from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and any act prohibited by B&P § 17200 *et seq.*; and (b) restoring all monies that may have been acquired by Defendants as a result of such unlawful, unfair or deceptive acts or practices;

7.          Under B&P § 17206, that Defendant Companies be assessed a civil penalty in the amount of $2,500 for each violation of the UCL, according to proof;

8.          Under B&P § 17536, that Defendant Companies be assessed a civil penalty in the amount of $2,500 for each violation of B&P § 17500, according to proof; and

9.          For such other and further relief as this Court deems just and proper.


DATED: September 22, 2022.          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By          */s/Jessica Thompson*

Jessica Thompson, *pro hac vice to be filed*
Stephanie Verdoia, *pro hac vice to be filed*
HAGENS BERMAN SOBOL SHAPIRO LLP

- 13 -

1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 268-9370
E-mail:  jessicat@hbsslaw.com

Cecilia N. Brennan, Esq. (SBN 243954)
HKM EMPLOYMENT ATTORNEYS LLP
401 West A Street, Suite 200 (#77)
San Diego, California 92101
Tel/Fax: (619) 717-6410
Email:  cbrennan@hkm.com

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES

# DEMAND FOR JURY TRIAL

Plaintiff Donald K. Shruhan, Jr. hereby demands a trial by jury on all claims.

DATED: September 22, 2022.    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By     */s/Jessica Thompson*
Jessica Thompson, *pro hac vice to be filed*
Stephanie Verdoia, *pro hac vice to be filed*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 268-9370
E-mail: jessicat@hbsslaw.com

Cecilia N. Brennan, Esq. (SBN 243954)
HKM EMPLOYMENT ATTORNEYS LLP
401 West A Street, Suite 200 (#77)
San Diego, California 92101
Tel/Fax: (619) 717-6410
Email: cbrennan@hkm.com

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES