UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD K. SHRUHAN,<br><br>        Plaintiff,<br><br>   v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No.   5:22-cv-05498-EJD<br><br>**ORDER GRANTING IN PART AND DENIES IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE**<br><br>Re: Dkt. No. 19 |

      Plaintiff, Donald K. Shruhan, Jr. ("Shruhan" or "Plaintiff"), brought this action against his employer, Apple Inc. ("Apple" or "Defendant"), alleging unlawful age discrimination and breach of contract. *See* Pl.'s First Am. Compl. ("Compl."), ECF No. 16. In response to Shruhan's First Amended Complaint ("Complaint"), Apple filed its current Motion to Dismiss, Strike, or for a More Definitive Statement ("Motion"). *See* Def.'s Mot. to Dismiss, Strike, or for a More Definitive Statement ("Def.'s Mot."), ECF No. 19. Shruhan filed an Opposition, and Apple filed its Reply. *See* Pl.'s Opp'n ("Opp'n"), ECF No. 23; Def.'s Reply ("Reply"), ECF No. 24. Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** Apple's Motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** Apple's Motion to strike. The Court does not reach Apple's Motion for a more definitive statement.

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

1

## I. BACKGROUND

### A. Parties

At the time of his First Amended Complaint, Plaintiff, Shruhan, was an individual working as a Director in Apple's Intellectual Property ("IP") Enforcement unit.[1] Compl. ¶ 18. Shruhan is domiciled in Pima County, Arizona. *Id.* ¶ 15.

Defendant, Apple, is a corporation incorporated in Delaware with its principal place of business in Cupertino, California. *Id.* ¶ 16.

### B. Procedural Background

Apple removed this case from the Santa Clara Superior Court on September 27, 2022. *See* Notice of Removal, ECF No. 1. Apple filed its first motion to dismiss and/or strike on November 2, 2022, after which Shruhan filed his First Amended Complaint on November 16, 2022. *See* Def.'s Mot. to Dismiss and/or Strike, ECF No. 12; Compl. Apple then filed its second motion to dismiss and/or strike at issue currently before the Court. An "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Because the target of Apple's first motion to dismiss and/or strike no longer exists, the Court **TERMINATES** that motion, ECF No. 12, as moot.

### C. Factual Background

Shruhan alleges the following facts. Shruhan began working for Apple in 2008 as Senior Director for Global Security in the Asia-Pacific region. Compl. ¶¶ 18, 20. Shruhan was responsible for developing investigative programs for security leaks, fraud, and theft, and he split his time between the Global Security team and the IP Enforcement team. *Id.* ¶¶ 20–21. Shruhan received positive performance reviews throughout his time in this role. *Id.* ¶¶ 22–23.

In negotiating his original employment contract, Shruhan received the maximum grant of Stock Options and Restricted Stock Units ("RSUs"). *Id.* ¶ 18. Each year, Apple provides

---

[1] Shruhan stated in his Opposition that he has since been demoted to an Individual Contributor-level employee. Opp'n 5.

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

2

employees a "Refresh" grant of RSUs ("RSU Refresh Grant") based on performance ratings. *Id.* ¶ 24. Managers determine RSU awards based on a bracket issued by the Human Resource ("HR") department. *Id.* ¶ 24. Shruhan received an RSU Refresh Grant every year except 2019. *Id.* ¶ 25.

Apple notified Shruhan in 2018 that it would not renew his contract to work in the Asia-Pacific region, and he would be leaving the region by 2020. *Id.* ¶ 26. Shruhan's supervisor on the IP Enforcement team, Tom Moyer ("Mr. Moyer"), asked Shruhan to work exclusively for the IP Enforcement team upon the expiration of his time in the Asia-Pacific region. *Id.* ¶ 26. Shruhan agreed on the conditions that he would be allowed to work from Arizona and remain at least a director-level employee with director-level compensation. *Id.* ¶¶ 26, 28. Shruhan believes this agreement was memorialized between his supervisors and the HR department. *Id.* ¶ 28. When Shruhan left the region in 2020, Shruhan had personally developed best-in-class programs in Global Security and IP Enforcement and saved Apple hundreds of millions of dollars during his time in the region. *Id.* ¶ 29.

In 2019, Shruhan was 64 years old. *Id.* ¶ 30. Despite his positive performance reviews in 2019, Shruhan was not awarded his RSU Refresh Grant that year. *Id.* ¶ 30. The minimum RSU Refresh Grant between fiscal years 2019 and 2022 was $7,000. *Id.* ¶ 24. The two other Senior Directors in his organization who were significantly younger than Shruhan received RSU Refresh Grants that year. *Id.* ¶ 32. Shruhan believes he was the only Senior Director who met or exceeded expectations but did not receive an RSU Refresh Grant that year. *Id.* ¶ 30.

Mr. Moyer informed Shruhan that Apple failed to award him an RSU Refresh Grant because they are designed as an investment in the future and a retention hook. *Id.* ¶ 34. Shruhan raised the issue to Apple's General Counsel, who advised Shruhan to resolve the issue with the HR department. *Id.* ¶ 35. The HR department told Shruhan that the RSU Refresh Grant was withheld from him because there was a new "clawback" policy. *Id.* ¶ 36. The HR department failed to provide Shruhan a copy of this policy. *Id.* ¶ 36, 37. Shruhan continued to work with his supervisors to resolve the issue throughout 2020 and 2021. *Id.* ¶ 39.

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

3

1   In 2021, Apple asked Plaintiff to submit an email indicating his plan for retirement, but

2   Shruhan did not notify Apple of any intention to retire. *Id.* ¶ 40.  Soon after, Shruhan learned that

3   Apple was seeking his demotion. *Id.* ¶ 41.  After another positive performance review in 2021,

4   Shruhan was told his RSU award would be diminished again and, in addition, he would not

5   receive the merit-pay increase awarded uniformly to Apple's U.S. employees. *Id.* ¶ 42.

6   During a call with Apple's Employee Relations in 2022, Apple informed Shruhan that they

7   did not award him an RSU Grant in 2019 because Mr. Moyer thought he was retiring. *Id.* ¶ 44.

8   Shruhan alleges he never indicated plans to retire to Mr. Moyer. *Id.* ¶ 45.

9   In 2022, Shruhan informed Apple of his intent to initiate this action alleging age

10  discrimination should they fail to resolve the issue. *Id.* ¶ 49.  Rather than resolve the issue,

11  Shruhan alleges Apple reduced his overall compensation and threated demotion in retaliation for

12  his complaints. *Id.* ¶¶ 50–52.

13  Shruhan alleges that Apple's conduct gives rise to six claims: (1) age discrimination in

14  violation of the Fair Employment and Housing Act ("FEHA"); (2) failure to prevent

15  discrimination in violation of FEHA; (3) retaliation in violation of FEHA; (4) retaliation in

16  violation of the California Labor Code; (5) breach of contract; and (6) violations of the California

17  Unfair Business Practices act. *See* Compl.  Apple has moved to dismiss the fifth cause of action

18  for breach of contract and strike portions of the Complaint including introductory paragraphs and

19  Shruhan's request for punitive damages. *See* Def.'s Mot.

20  **II.    LEGAL STANDARD**

21      **A.    Motion to Dismiss**

22  A complaint must contain "a short and plain statement of the claim showing that the

23  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a

24  complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  When

25  deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept

26  as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  While

27  
28  Case No.:   5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

4

a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### B. Motion to Strike

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). "Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp.2d 1028, 1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Similarly, impertinent matter does not pertain, and is not necessary, to the issues in question. *Id.* "Allegations may be stricken as scandalous if they bear no relation to the claims at issue and may cause the other party prejudice." *McCamey v. Hewlett Packard Co.*, No. CIV. S-11-0702 FCD, 2011 WL 4056158, at *5 (E.D. Cal. Sept. 12, 2011) (citing *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir.1992). A motion to strike will generally not be granted unless it is clear the matter to

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

5

1  be stricken could not have any possible bearing on the subject matter of the litigation. *See RDF*

2  *Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005); *see also LeDuc v.*

3  *Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

## III.  DISCUSSION

### A.  Request for Judicial Notice

As an initial matter, Apple requests the Court take Judicial Notice of Apple's offer letters to Shruhan.  Def.'s Request for Judicial Notice, ECF No. 20 ("Request for Judicial Notice") (offer letters attached as Exhibit A).

"In evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice." *MLW Media LLC v. World Wrestling Ent., Inc.*, No. 22-CV-00179-EJD, 2023 WL 4053802, at *2 (N.D. Cal. June 15, 2023); *see also Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  A court may take judicial notice of a fact "not subject to reasonable dispute" if it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Apple argues that judicial notice is proper because the offer letters are incorporated into Shruhan's Complaint by reference.  Request for Judicial Notice 2.  Apple believes Shruhan refers to the offer letters in his Complaint as his "Employment Agreement."  *Id.*  Shruhan did not oppose Apple's request for judicial notice.  While the Court cannot ascertain whether the offer letters are what Shruhan refers to in his Complaint as the "Employment Agreement," it will take judicial notice of the offer letters as documents not subject to reasonable dispute and whose accuracy can be readily determined by the parties.

### B.  Motion to Dismiss Breach of Contract Claim

California contracts in a diversity case "will be interpreted so as to reach the same results

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE
6

as would be reached in a California court." *Republic Pictures Corp. v. Rogers*, 213 F.2d 662, 664 (9th Cir. 1954). To state a claim for breach of contract in California, a plaintiff must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011).

### 1.   Pleading the Existence of a Contract

To allege the existence of a contract, a "plaintiff may set forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect." *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, 2013 WL 3357929, at *6 (N.D. Cal. July 3, 2013); *see also Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *2 (N.D. Cal. Aug. 15, 2011). Attaching a copy of the contract is not required so long as the plaintiff sets forth the material terms verbatim or pleads the contract according to its legal effect. *See Dias v. JP Morgan Chase*, N.A., No. 5:13-CV-05327-EJD, 2015 WL 1263558, at *3 (N.D. Cal. Mar. 19, 2015). A pleading of the legal effect of a contract is sufficient where the plaintiff supports its assertions with facts and testimonial evidence pointing to the plausible existence of contractual terms that would give rise to the asserted legal effect. *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1102 (E.D. Cal. 2010).

The Court can discern four allegations of breach in Shruhan's Complaint, in which Shruhan references six agreements (noted in underline): (1) Apple personnel breached the "implied-in-fact contract formed by its written policies" by failing to provide Shruhan an RSU Refresh Grant in violation of Apple's "Compensation Policies," Compl. ¶ 87; (2) Apple personnel breached the "Employment Agreement" by failing to provide Shruhan an RSU Refresh Grant, *id.*; (3) Apple personnel breached "RSU Refresh Grants" by clawing back the grant in a manner inconsistent with Apple's "company policy," *id.* ¶ 88; and (4) Apple personnel breached the "Repatriation Agreement" by attempting to demote Shruhan and denying yearly merit-pay increases granted to other U.S. employees, *id.* ¶ 89. Shruhan did not attach the documents referenced in these claims or set forth the terms verbatim in his Complaint, so the only way the

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

7

Court could find the existence of these contracts is if Shruhan pleads their legal effect. *See McKinnon*, 2013 WL 3357929, at *6; *Lyons*, 2011 WL 3607608, at *2. The Court will analyze each claim in turn.

### a) "Implied-in-Fact Contract Formed by Written Policies" and "Apple's Compensation Policies"

First, Shruhan claims that Apple personnel breached the "implied-in-fact contract formed by its written policies" by failing to provide Shruhan an RSU Refresh Grant in violation of Apple's "Compensation Policies. Compl. ¶ 87.

The Court is unable to discern what Shruhan means by "implied-in-fact contract formed by its written policies." Shruhan references several policies throughout its Complaint but fails to identify which policy Apple allegedly breached. *See, e.g., id.* ¶ 31 (referencing compensation policy); *id.* ¶ 36 (referencing clawback policy); *id.* ¶ 47 (same); *id* ¶ 88 (referencing company policy).

The Court also finds a lack of clarity with Shruhan's description of Apple's "Compensation Policies." The only fact regarding Apple's Compensation Policies that is clear from Shruhan's Complaint is that they were developed and administered by Apple personnel in Cupertino, California. *Id.* ¶ 85. The Complaint also states that manager compensation guidelines set the minimum Refresh RSU Grant for the 2019 fiscal year at $7,000, but it is not entirely clear if the "manager compensation guidelines" are the "Compensation Policies" referenced later in the Complaint. *Id.* ¶ 31. Shruhan also refers to both compensation polic*ies* (plural), *id.* ¶¶ 85, 87, and compensation polic*y* (singular), *id.* ¶ 31, making it unclear if Shruhan is describing a set of policies or one particular compensation policy. This lack of clarity fails to put Apple on notice of the contractual terms at issue and the obligations it is alleged to have breached.

Therefore, the Court GRANTS Apple's Motion to dismiss claims arising from the breach of Apple's breach of the "implied-in-fact contract formed by its written policies" with leave to amend.

### b)  "Employment Agreement"

Second, Shruhan claims that Apple personnel breached the "Employment Agreement" by failing to make an RSU Refresh Grant for Shruhan in 2019. Compl. ¶ 87.

Shruhan provides one description of the Employment Agreement: "Shruhan's executed employment agreement stated that 'Your employment will be governed by and interpreted under the laws of the State of California, without regard to conflict of law principles.'" *Id.* ¶ 19. Shruhan argues that his Complaint pleads facts of the Employment Agreement's implied terms rather than relying on the express terms. Opp'n 2–3. Specifically, Shruhan alleges that implicit in the Employment Agreement is Apple's Compensation Policies governing RSU Refresh Grants. Shruhan then goes on to cite to a paragraph in his Complaint describing RSU Refresh Grants. *Id.* (citing Compl. ¶ 24). As the Court noted above, Shruhan has failed to clearly plead the existence of Apple's Compensation Policies, so describing the Employment Agreement as impliedly containing Apple's Compensation Policies is not enough to allege the existence of a contract.[2] The Court cannot find any facts in Shruhan's Complaint pointing to the plausible existence of contractual terms that would give rise to the asserted legal effect.

Therefore, the Court GRANTS Apple's Motion to dismiss claims arising from breach of the "Employment Contract" with leave to amend.

### c)  "RSU Refresh Grant"

Third, Shruhan claims that Apple personnel breached the RSU Refresh Grant by clawing back the grant in a manner inconsistent with Apple's "company policy." Compl. ¶ 88.

Shruhan alleges that each year, Apple employees receive an RSU Refresh Grant based on Apple's manager compensation guidelines. *Id.* ¶ 24. The purpose of RSU Grants is to "retain key employees" in lead positions. *Id.* Apple's pattern and practice is to tie RSU awards to employee

---

[2] Apple stated in its Motion that it believes that the term "Employment Agreement" references Shruhan's executed "Offer Letter," and attached the Offer Letter to its Motion. Def.'s Mot. 6 n.3. If it is true that this is the document Plaintiff refers to as the "Employment Agreement," Shruhan may reference this document should he choose to amend his Complaint.

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

9

1  performance ratings. *Id.* "Each year, Apple HR issues a bracket for managers to guide their
2  determination of RSU awards based on performance, with higher performers to be awarded RSUs
3  at the higher end of the bracket, and lower performers at the lower end, etc. The minimum Refresh
4  grant between fiscal years 2019 and 2022, per Apple's compensation guidelines, was $7,000." *Id.*
5  The RSU Refresh Grant was a written offer accepted by Shruhan in consideration for Shruhan's
6  continued employment at Apple. *Id.* ¶ 88. Under this written agreement, any recoupment of
7  unvested RSU must be made pursuant to "company policy." *Id.* In other words, Shruhan
8  essentially alleges that the RSU Refresh Grant promise that Apple would recover any unvested
9  RSUs pursuant to "company policy," and the way Apple clawed back Shruhan's RSUs in 2019
10 was inconsistent with "company policy," and therefore in violation of the RSU Refresh Grant. *See*
11 *id.* ¶¶ 24, 88.

12      This begs the question, "what is the 'company policy'"? If the RSU Refresh Grants
13 include a term stating that any recoupment of unvested RSU must be made pursuant to "company
14 policy," and this is the specific term Shruhan alleges was breached, Shruhan needs to make clear
15 which policy is referred to in the RSU Refresh Grant. Again, Shruhan references several policies
16 throughout his Complaint but fails to identify which policy is contained in the RSU Refresh Grant.
17 *See, e.g., id.* ¶ 31 (referencing compensation policy); *id.* ¶ 36 (referencing "clawback" policy); *id.*
18 ¶ 47 (same); *id* ¶ 88 (referencing company policy). At this time, the Court cannot find any facts in
19 Shruhan's Complaint that put Apple on notice of the contractual terms that would have the legal
20 effect of binding Apple to perform in a particular way.

21      Therefore, the Court GRANTS Apple's Motion to dismiss claims arising from breach of
22 the "RSU Refresh Grants" with leave to amend.

### d) "Repatriation Agreement"

24      Fourth, Shruhan claims that Apple personnel breached the "Repatriation Agreement" by
25 attempting to demote Shruhan and denying yearly merit-pay increases granted to other Director
26 employees. Compl. ¶ 89.

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

10

1   Shruhan alleges that he and Mr. Moyer entered an agreement, referred to as "Repatriation
2   Agreement," for Shruhan to return to the United States and work for the IP Enforcement team full
3   time. *Id.* ¶ 26–28. "The Repatriation Agreement stipulated that he shall remain at least a director-
4   level employee, be permitted to work from Arizona, and continue to receive a salary
5   commensurate with his performance as a director-level employee. Consideration for this
6   Agreement was Plaintiff's continued employment at Apple." *Id.* ¶ 89. Shruhan believes that this
7   agreement was memorialized in writing between Mr. Moyer to Apple's HR department. *Id.* ¶ 28.

8   The Court finds this sufficient to put Apple on notice as to the basis for Shruhan's claim.
9   While Shruhan has not attached the agreement or pled its terms verbatim, Shruhan sufficiently
10  pleads the contract according to its legal effect by describing the terms of the agreement and the
11  obligations it created. *See, e.g., Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094,
12  1102 (E.D. Cal. 2010) ("[A]lthough plaintiff's complaint is inartful, plaintiff alleged that defendant
13  'willfully breached the express and implied terms' of the contract by 'refus[ing] to cease its unfair
14  and unlawful solicitation [of] and direct dealing with plaintiff's independent retailer customers.'
15  Plaintiff therefore alleged that the contract prohibited Defendant from selling directly to
16  customers, sufficiently putting defendant on notice as to this basis for plaintiff's claim."). Apple
17  has enough information to identify the email memorializing the agreement and enough detail to be
18  put on notice of which agreement Shruhan references, the terms of the agreement, and how Apple
19  allegedly breached it.

20  The Court finds irrelevant Apple's argument that the written communication between Mr.
21  Moyer the HR department cannot serve as the basis of an express contract because Shruhan was
22  not a party to the written communication.[3] Def.'s Mot. 8. Shruhan's Complaint does not allege

---

[3] Apple misquotes and misrepresents Shruhan's Complaint. Apple states that Shruhan alleged there was an "express written agreement" containing the terms of the Repatriation Agreement, citing paragraph 28 of the Complaint. Reply 9. Paragraph 28 does not contain this language. *See* Compl. ¶ 28 ("On information and belief, this agreement was *memorialized* in written communications between Plaintiff's supervisors to Apple HR.") (emphasis added). Apple erroneously pulls the quote from paragraph 88, which discusses the RSU Refresh Grant, not the Repatriation Agreement. Compl. ¶ 88.

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE
11

that the email serves as the basis of an express contract, but rather that it is evidence of the agreement memorialized. Def.'s Mot. 8. The Court is also unconvinced by Apple's argument that Shruhan failed to plead the existence of an implied-in-fact contract because the implied promise to maintain Shruhan as a director-level employee conflicts with the express term in his Offer Letter that Shruhan was an "at will" employee. *Id.* at 9. The Court finds these two terms do not conflict—an agreement promising to maintain an employee at a specific role during employment does not conflict with the caveat that they can still be fired "at will." *Compare, e.g., Rubinstein v. SAP AG*, No. C 11-06134 JW, 2012 WL 726269, at *4 (N.D. Cal. Mar. 1, 2012) (finding implied-in-fact terms providing for cause termination were precluded by express terms providing at will termination).

Because the Court has found that Shruhan sufficiently pled the existence of the Repatriation Agreement, the Court will continue its analysis for the Repatriation Agreement.

### 2. Pleading Defendant's Breach (Repatriation Agreement)

Shruhan alleges that Apple breached the terms of the Repatriation Agreement by: (1) attempting to demote Shruhan from a director-level to an Individual Contributor-level employee in violation of the agreement to maintain Shruhan as a director-level employee, and (2) denying Shruhan yearly merit-pay increases that were uniformly granted to other U.S. employees in 2021 and 2022 in violation of the agreement to maintain Shruhan at a director-level salary. Compl. ¶ 89.

The Court finds that Shruhan has failed to sufficiently allege a breach of the agreement to maintain him at a director-level salary. First, while it is true, as Apple highlights, that Shruhan does not allege that the agreement mandates pay raises, Def.'s Mot. 9, if Apple's authorization of annual merit-pay increases to other U.S. director-level employees caused Shruhan's salary to fall below the standard U.S. director-level employee, this could potentially constitute a breach of the agreement to maintain Shruhan at a director-level salary. However, Shruhan's Complaint fails to allege that the failure to grant Shruhan a yearly merit-pay increase placed his salary below that of

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

12

1    the standard director-level salary.  Second, while Apple's conduct of demoting Shruhan could

2    potentially constitute a breach, Shruhan did not allege in his Complaint that he had in fact been

3    demoted.  However, Shruhan indicated in his Opposition that since filing his Complaint, he has in

4    fact been demoted to Individual Contributor-level employee in violation of the agreement to

5    maintain Shruhan as a director-level employee.  Opp'n 14.  The Court allows leave to amend, and

6    Shruhan may include these additional facts if he chooses to file an amended complaint.

7          The Court therefore GRANTS Apple's Motion to dismiss claims arising from breach of the

8    Repatriation Agreement.

### C. Motion to Strike

Apple moves to strike (1) an ambiguous phrase from paragraph 89, (2) introductory paragraphs 1 through 8, and (3) Shruhan's request for punitive damages.  Def.'s Mot. 11–13.

#### 1. "Among Other Things"

As an initial matter, Shruhan has consented to Apple's request to strike "among other things" from paragraph 89 of the Complaint.  Opp'n 18.  Therefore, the Court GRANTS Apple's Motion to strike "among other things."

#### 2. Introduction Paragraphs

Apple requests that the Court strike Shruhan's opening paragraphs 1 through 8 on the grounds that they are immaterial, irrelevant, and prejudicial.  Def.'s Mot. 11–12.

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Allegations providing background or historical material will not be stricken unless there is a showing of undue prejudice.  *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010) (citation omitted) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)).  "Moreover, allegations which contribute to a full understanding of the complaint as a whole need not be stricken."  *Id.*; *see also RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005); *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 67–68 (E.D.N.Y.

2011) ("[E]ven assuming that a portion of the background material is irrelevant or immaterial, allegations that 'supply background or historical material or other matter of an evidentiary nature' normally will' not be stricken from the pleadings unless they are unduly prejudicial to the defendant' . . . [T]he relevancy and admissibility of evidence . . . 'require the context of an ongoing and unfolding trial in which to be properly decided' and in any event should not be decided 'on the sterile field of the pleadings alone.'") (first quoting *Impulsive Music v. Pomodoro Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *3 (W.D.N.Y. Nov. 19, 2008) and then *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

Shruhan's opening paragraphs contain historical and background information about the trends of age discrimination in the United States and specifically Silicon Valley. Compl. ¶¶ 1–8. These paragraphs summarize studies on older workers facing biases in the employment industry, the legislative history of antidiscrimination laws, and reports and statements from the Equal Employment Opportunity Commission finding that age discrimination persists regardless of the practice being outlawed. *Id.* ¶¶ 1–5. The paragraphs also focus on age discrimination specifically in Silicon Valley companies such as Apple, Google, Facebook, Tesla, Facebook, and LinkedIn by including data showing the median ages for these companies, a statement made by Facebook CEO Mark Zuckerberg allegedly showing bias toward older workers, a settlement by Google for age discrimination allegation, and an IBM investigation revealing statements allegedly showing bias toward older workers. *Id.* ¶¶ 6–8.

Apple argues that the paragraphs create undue prejudice by "confusing issues at trial and causing the jury to draw unwarranted inferences," and the paragraphs regarding conduct by third party individuals and organizations are immaterial and impertinent. Def.'s Mot. 11–12.

The Court finds Apple's arguments unpersuasive. Apple has not shown how the potential of confusing the issues at trial or the potential of the jury drawing unwarranted inferences creates undue prejudice. The Court can discern the facts important to each claim, and as Apple stated itself, Apple could cure any potential confusion by "explain[ing] why instances of alleged

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

14

1  discrimination elsewhere or settlements between other companies and their employees does not

2  bear on whether anyone at Apple subjected Shruhan to discrimination." *Id.* at 12; *see also, e.g.,*

3  *Lynch*, 278 F.R.D. at 67–68.  Apple also fails to make clear that this material could not have any

4  possible bearing on the subject matter of the litigation.  The paragraphs provide context relevant to

5  Shruhan's claims of age discrimination in the workplace by showing how it fits into the broader

6  trends of ageism across the United States and specifically Silicon Valley.  These are permissible

7  statements of historical and background information that could potentially have bearing on the

8  issues in this case by contributing to a full understanding of the complaint as a whole.  *See, e.g.,*

9  *LeDuc*, 814 F. Supp. at 830; *In re Facebook PPC Advert. Litig.*, 709 F. Supp. at 773; *RDF Media*

10  *Ltd*, 372 F. Supp. at 566.

11  Therefore, the Court DENIES Apple's Motion to strike paragraphs 1 through 8 on the

12  grounds that they are permissible statements of historical and background context.

### 3.     Request for Punitive Damages

14  Apple requests that the Court strike Shruhan's request for punitive damages in his claims

15  of age discrimination, failure to prevent age discrimination, FEHA retaliation, and Labor Code

16  retaliation.[4]  Def.'s Mot. 13.

17  "[I]t is procedurally improper to bring a motion to strike punitive damages because

18  punitive damages do not fall under any of [Rule 12(f)'s] five enumerated categories."

19  *Agape Family Worship Center, Inc. v. Gridiron*, 2016 WL 633864, *6 (C.D. Cal. 2016) (citing

20  *Whittlestone*, 618 F.3d 970, 973–74 (9th Cir. 2010)) (listing Rule 12(f)'s five categories as

21  insufficient defense, redundant, immaterial, impertinent, or scandalous).

22  Apple's Motion to strike punitive damages is procedurally improper and premature at this

23  stage.  The Court will defer ruling on this issue of proper remedies and therefore DENIES Apple's

---

[4] Defendant applies the wrong pleading standard. "Federal Rules of Civil Procedure provide the pleading standard for cases in federal courts." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015). In federal court, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Case No.: 5:22-cv-05498-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE

15

Motion to strike Shruhan's request for punitive damages.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to dismiss Plaintiff's fifth cause of action for breach of contract with **LEAVE TO AMEND**. The Court **GRANTS** Defendant's Motion to strike the phrase "among other things" in paragraph 89.  The Court **DENIES** Defendant's Motion to strike paragraphs 1 through 8 and Plaintiff's requests for punitive damages.  Should Plaintiff choose to amend his complaint, the Court orders Plaintiff file his amended complaint by October 23, 2023.

**IT IS SO ORDERED.**

Dated: September 29, 2023

EDWARD J. DAVILA
United States District Judge