UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD K. SHRUHAN,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No.   22-cv-05498-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 32 |

Plaintiff, Donald K. Shruhan, Jr. ("Shruhan" or "Plaintiff"), brought this action against his former employer, Apple Inc. ("Apple" or "Defendant"), alleging unlawful age discrimination and breach of contract. *See* Second Amended Complaint ("SAC"), ECF No. 31. In response to Shruhan's SAC, Apple filed its current Motion to Dismiss ("Motion"). *See* Defendant's Motion to Dismiss ("Mot."), ECF No. 32. Shruhan filed an Opposition, and Apple filed its Reply. *See* Plaintiff's Opposition to Motion to Dismiss ("Opp."), ECF No. 33; Defendant's Reply in Support of Motion to Dismiss ("Reply"), ECF No. 34. Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Apple's motion to dismiss.

**I.    BACKGROUND**

The below allegations are taken from the SAC.

Plaintiff, now retired, began working for Apple in 2008 as the company's first Senior

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS

1

Director of Global Security and IP Enforcement for the Asia Pacific region. SAC ¶¶ 18, 20. Plaintiff was responsible for developing investigative programs for security leaks, fraud, and theft, and he split his time between the Global Security team and the IP Enforcement team while he was based in the Asia-Pacific region. *Id.* ¶¶ 20–21. Plaintiff received positive performance reviews throughout his time in this role. *Id.* ¶¶ 22–23.

In negotiating his original employment contract, Plaintiff sought and received the maximum grant of Stock Options and Restricted Stock Units ("RSUs"). *Id.* ¶ 18. Based on Apple's Fiscal Year 2019 Manager Compensation Guidelines (the "2019 Guidelines"), employees receive a "Refresh" grant of RSUs ("RSU Refresh Grant") based on performance ratings. *Id.* ¶ 24. Managers determine RSU awards based on a bracket issued by the Human Resource ("HR") department. *Id.* ¶ 24. Shruhan received an RSU Refresh Grant every year except 2019. *Id.* ¶ 25.

Apple notified Shruhan in 2018 that it would not renew his contract to work in the Asia-Pacific region, and he would be leaving the region by 2020. *Id.* ¶ 26. Shruhan's supervisor on the IP Enforcement team, Tom Moyer, asked Shruhan to work exclusively for the IP Enforcement team upon the expiration of his time in the Asia-Pacific region. *Id.* Shruhan agreed on the conditions that he would be allowed to work from Arizona and remain at least a director-level employee with director-level compensation. *Id.* ¶¶ 26, 28. Shruhan believes this agreement was memorialized in written communications between his supervisors and the HR department. *Id.* ¶ 28. When Shruhan left the region in 2020, Shruhan had personally developed best-in-class programs in Global Security and IP Enforcement and saved Apple hundreds of millions of dollars during his time in the region. *Id.* ¶ 29.

In 2019, Shruhan was 64 years old. *Id.* ¶ 30. Despite his positive performance reviews in 2019, Shruhan was not awarded his RSU Refresh Grant that year. *Id.* ¶ 30. The minimum RSU Refresh Grant between fiscal years 2019 and 2022 was $7,000. *Id.* ¶ 24. The two other Senior Directors in his organization who were significantly younger than Shruhan received RSU Refresh Grants that year. *Id.* ¶ 32. Shruhan believes he was the only Senior Director who met or exceeded expectations but did not receive an RSU Refresh Grant that year. *Id.* ¶ 30.

Mr. Moyer informed Shruhan that Apple failed to award him an RSU Refresh Grant because they are "designed as an investment in the future and a retention hook." *Id.* ¶ 34. Shruhan raised the issue to Apple's General Counsel, who advised Shruhan to resolve the issue with the HR department. *Id.* ¶ 35. The HR department told Shruhan that the RSU Refresh Grant was withheld from him because there was a new "clawback" policy, and HR performed a "clawback" analysis and "compensation review," and they concluded Plaintiff was entitled to zero RSUs. *Id.* ¶ 36. When Shruhan requested a copy of the "clawback" policy, the HR department told him that there was no written policy. *Id.* Shruhan also requested a copy of the "compensation review" but has not been provided any "documentation supporting this review." *Id.* Shruhan continued to work with his supervisors to resolve the issue throughout 2020 and 2021. *Id.* ¶ 39.

In September 2021, Apple asked Shruhan to submit an email "indicating his plan for retirement," which Shruhan declined to do. *Id.* ¶ 40. Soon after, Shruhan learned that Apple was seeking his demotion. *Id.* ¶ 41. After another positive performance review in 2021, Shruhan was told his RSU award would be diminished again and he would not receive the merit-pay increase awarded uniformly to Apple's U.S. employees. *Id.* ¶ 42. During a call with Apple Employee Relations in 2022, Apple informed Shruhan that they did not award him an RSU Grant in 2019 because Mr. Moyer thought he was retiring. *Id.* ¶ 44. Shruhan alleges he never indicated plans to retire to Mr. Moyer. *Id.* ¶ 45. In a follow-up call with Apple Employee Relations, Shruhan asked why was there no reference to any "clawback" policy as a justification Apple's decision. *Id.* ¶ 47. Apple provided an updated copy of a clawback policy document titled "RSU Adjustment Policy" that stated "RSUs cannot be adjusted without the Compensation Committee's prior approval and without the employee's signed agreement in the adjustment letter." *Id.* ¶ 47. Shruhan contends that Apple never sought or obtained his agreement to adjust the RSUs. *Id.*

In 2022, Shruhan informed Apple of his intent to initiate this action alleging age discrimination should they fail to resolve the issue. *Id.* ¶ 50. Rather than resolve the issue, Shruhan alleges Apple reduced his overall compensation and demoted him on November 19, 2022, three days after he filed his First Amended Complaint. *Id.* ¶¶ 51–53.

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
3

1   Shruhan alleges that Apple's conduct gives rise to six claims: (1) age discrimination in
2   violation of the Fair Employment and Housing Act ("FEHA"); (2) failure to prevent
3   discrimination in violation of FEHA; (3) retaliation in violation of FEHA; (4) retaliation in
4   violation of the California Labor Code; (5) breach of contract; and (6) violations of the California
5   Unfair Business Practices act.  *See* SAC 12–18.

On September 29, 2023, the Court granted Apple's motion to dismiss the First Amended Complaint with leave to amend.  ECF No. 16.  After Shruhan filed the SAC, Apple again moved to dismiss the fifth cause of action for breach of contract.  *See generally* Mot.

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. Rule Civ. Pro. 8(a)(2).  While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The court must generally accept as true all "well-pleaded factual allegations."  *Ashcroft v. Iqbal*, 556 U.S at 664.  The court also must construe the alleged facts in the light most favorable to the plaintiff.  *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.").  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
4

1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.     DISCUSSION

This is Apple's second motion to dismiss. In this Court's order granting Apple's first motion, the Court dismissed Plaintiff's fifth cause of action for breach of contract, finding that Shruhan had not properly alleged the existence of a contract on three of his four theories of liability. ECF No. 29 ("MTD Order"). With respect to the fourth theory, the Court found that Shruhan did plead the existence of the "Repatriation Agreement," but failed to plead a breach of that agreement. *Id.*

Specifically, the Court ruled as follows:

- Shruhan's breach of implied-in-fact contract claims based on Apple's "written policies" and "compensation policies" failed to put Apple on notice of the contractual terms at issue and the obligations it is alleged to have breached. *Id.* at 8.

- Shruhan failed to plead any facts pointing to the plausible existence of contractual terms that would give rise to the asserted legal effect to support Shruhan's claim for breach of the "Employment Agreement."[1] *Id.* at 9.

- Shruhan's claims for breach of the "RSU Refresh Grant" failed to put Apple on notice of the contractual terms that would have the legal effect of binding Apple to perform in a particular way. *Id.* at 10.

- Shruhan sufficiently plead the existence of the "Repatriation Agreement," but failed to plead a breach of that agreement. *Id.* at 11.

To address these deficiencies, Shruhan's SAC (1) replaced generic references to Apple's "manager compensation guidelines" to identify Apple's "Fiscal Year 2019 Manager

---

[1] The Court previously granted Apple's Request for Judicial Notice (ECF No. 20) of Apple's offer letters to Shruhan. MTD Order 6. At the time of the Court's prior order, the Court could not ascertain whether the offer letters were what Shruhan refers to in his Complaint as the "Employment Agreement." *Id.* The parties do not appear to dispute that the offer letters constitute the "Employment Agreement," and the Court proceeds with that understanding for purposes of this Order.

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
5

1  Compensation Guidelines," and (2) identified Apple's "RSU Adjustment Policy" as the specific

2  "clawback policy." *See, e.g.*, SAC ¶¶ 31, 47.

3  Apple contends that the Court should again dismiss the fifth cause of action for breach of

4  contract because Shruhan still fails to sufficiently plead the existence and breach of the above

5  contracts.[2]  Mot. 2.

6  The Court addresses both arguments below.

**A.     Whether the SAC Sufficiently Alleges the Existence of Contracts**

8  To allege the existence of a contract, a "plaintiff may set forth the contract verbatim, attach

9  it as an exhibit, or plead it according to its legal effect." *McKinnon v. Dollar Thrifty Auto. Grp.,*

10 *Inc.*, 2013 WL 3357929, at *6 (N.D. Cal. July 3, 2013); *see also Lyons v. Bank of Am., NA*, 2011

11 WL 3607608, at *2 (N.D. Cal. Aug. 15, 2011).  Attaching a copy of the contract is not required so

12 long as the plaintiff sets forth the material terms verbatim or pleads the contract according to its

13 legal effect.  *See Dias v. JP Morgan Chase, N.A.*, No. 5:13-CV-05327-EJD, 2015 WL 1263558, at

14 *3 (N.D. Cal. Mar. 19, 2015).  Pleading the legal effect of a contract is sufficient where the

15 plaintiff supports its assertions with facts and testimonial evidence pointing to the plausible

16 existence of contractual terms that would give rise to the asserted legal effect.  *Boland, Inc. v. Rolf*

17 *C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1102 (E.D. Cal. 2010).

18 The SAC does not attach any written contracts.  Thus, whether Shruhan sufficiently plead

19 the existence of the alleged contracts turns on whether the SAC sets forth the material terms

20 verbatim or pleads the contracts according to their legal effect.  Apple contends Shruhan has done

21 neither.  Shruhan counters that the SAC remedies the deficiencies because it identifies the two

22 relevant Apple policies that Shruhan contends were breached: (1) the Fiscal Year 2019 Manager

23 Compensation Guidelines, and (2) the RSU Adjustment Policy.  Both were purportedly "implied-

24 in-fact" in Plaintiff's Employment Agreement.  SAC ¶ 90.

---

[2] Apple does not move to dismiss Shruhan's breach of contract theory as to the Repatriation Agreement.  Mot. 5, n. 2.

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
6

### 1. The 2019 Guidelines

Apple argues that Shruhan's identification of the 2019 Guidelines still fails to provide sufficient notice of the legal effect of the policy because Plaintiff "neither alleges where the policy is stored, how he became aware of such policy, or otherwise any information that would permit Apple to identify what he could be referring to."  Mot. 7.  In Apple's view, Plaintiff's substitution of the name of the policy "does nothing" to allege the "particular terms and conditions of employment."  *Id.*  Apple also faults Shruhan for failing to allege "any such express terms" from the 2019 Guidelines.  *Id.* at 8.

In response, Shruhan explains that the 2019 Guidelines "required at least a minimum RSU Refresh Grant of $7,000 in RSUs," and "by failing to make an RSU Refresh Grant consistent with" the 2019 Guidelines, Apple breached an implied-in-fact contract "formed by" the 2019 Guidelines.  Opp. 3 (citing SAC ¶¶ 24, 31).

The contractual understanding of two parties to an employment agreement "need not be express, but may be *implied in fact*, arising from the parties' *conduct* evidencing their actual mutual intent to create such enforceable limitations."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 336 (2000) (emphasis in original).  An implied-in-fact contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."  *Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (internal quotation marks omitted).  In both cases, "[c]ontract formation requires mutual consent, which cannot exist unless the parties agree upon the same thing in the same sense."  *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013) (internal quotation marks omitted).  When determining whether an implied-in-fact contract exists, courts look to numerous factors, including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged."  *Guz*, 24 Cal. 4th at 336–37 (quoting *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 680 (1988)).  The touchstone is the "actual understanding of the parties."  *Id.* at 337.

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
7

Shruhan argues that the *Foley* factors support finding that the 2019 Guidelines formed implied terms of the Employment Contract because he has been continuously employed by Apple for 14 years (SAC ¶ 18), Apple provides a refresh grant each year of RSUs (*id.* ¶ 24), and Apple's pattern and practice is to award these grants to "retain key employees," and to tie the amount of the grant to performance ratings (*id.*). Apple does not address these factors. Instead, Apple argues that Shruhan's theory that the 2019 Guidelines became part of the Employment Agreement fails because those implied terms "would be unenforceable because they contradict the express terms of the 2018 Offer Letter." Reply 3. The Court already rejected this argument in a similar context when Apple contended Shruhan failed to plead the existence of an implied-in-fact contract because an implied promise to maintain Shruhan as a director-level employee conflicts with the express term in the Employment Agreement that Shruhan was an "at will" employee. *See* MTD Order 12. Apple now argues that the Employment Agreement states that Apple is "free to modify the terms and conditions of employment" and it "expressly contemplates a one-time RSU grant recommendation with no future commitments"—two terms that Apple argues would contradict any implied-in-fact contract regarding a future promise to grant additional RSUs. Mot. 3.

Apple's cited cases involve written agreements that provided for "at-will" employment, and the courts in both cases rejected plaintiff's attempt to read in an implied contract that would prohibit termination without cause. *Rubinstein v. SAP AG*, No. C 11-06134 JW, 2012 WL 726269, at *4 (N.D. Cal. Mar. 1, 2012) ("Because the express term [that employment would be at will] is controlling, Plaintiff's breach of contract claim based on termination without cause in violation of an alleged implied contract must fail"); *Tomlinson v. Qualcomm, Inc.*, 97 Cal. App. 4th 934, 944–45 (2002) (express term in employment agreement "stating that [plaintiff's] employment was on an at-will basis" precluded existence of implied agreement "of continued employment"). And unlike the "amorphous promise to 'consider' what employees at other companies are earning" the court in *Ladas* found insufficiently definite to be enforceable, the alleged 2019 Guidelines here involve a minimum grant of $7,000 in refresh RSUs. *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 771 (1993).

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
8

As before, the Court finds that the terms here do not conflict. An (implied) agreement promising additional RSU grants does not conflict with an earlier (written) agreement silent on future RSU grants. The Court previously found that Shruhan's allegations regarding the minimum RSU Refresh Grant of $7,000 were unclear because the complaint referenced multiple policies and Shruhan "fail[ed] to identify which policy Apple allegedly breached." MTD Order 8. Shruhan has now identified in the SAC—and confirmed in his Opposition—the policy he contends Apple breached: the 2019 Guidelines which purportedly required a minimum grant of $7,000 in refresh RSUs. SAC ¶¶ 24, 31, 88, 90; Opp. 1. Moreover, the *Foley* factors discussed above support finding that the 2019 Guidelines formed implied terms of the Employee Contract.

The Court finds the allegations sufficient to put Apple on notice of the contractual terms in the 2019 Guidelines that would have the legal effect of binding Apple to perform in a particular way.

### 2. The RSU Adjustment Policy

Apple argues that Shruhan's breach of contract theory based on the RSU Adjustment Policy also fails because Shruhan has not sufficiently established that the RSU Adjustment Policy is a contract. The Court previously explained that "[i]f the RSU Refresh Grants include a term stating that any recoupment of unvested RSU must be made pursuant to 'company policy,' and this is the specific term Shruhan alleges was breached, Shruhan needs to make clear which policy is referred to in the RSU Refresh Grant." MTD Order 10.

Shruhan sought to clarify this theory in the SAC. He alleges that any recoupment of unvested RSUs must be made pursuant to "any recoupment or clawback policies in effect at that time." SAC ¶ 91. He further alleges that Apple's "RSU Adjustment Policy was a clawback policy in effect at the time that Apple purported to clawback Plaintiff's RSU Refresh Grant." *Id.* This RSU Adjustment Policy provided that "RSUs cannot be adjusted without the Compensation Committee's prior approval and without the employee's signed agreement in the adjustment letter." SAC ¶ 47. Shruhan alleges that "Apple never sought or obtained [Shruhan's] agreement to adjust his RSUs." *Id.*

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
9

1  Apple argues that Shruhan's theory fails because Shruhan was never issued a 2019 RSU
2  Refresh Grant and therefore he could not have been a party to any RSU Refresh Grant agreement.
3  Reply 6.  The Court agrees.  Shruhan argues that "each RSU Refresh Grant was a written offer that
4  was accepted by Plaintiff" and to clawback those stocks, Apple "was required to follow its RSU
5  Adjustment Policy."  SAC ¶ 91; Opp. 7.  However, Shruhan has not alleged that Apple clawed
6  back or adjusted any stocks other than those in 2019.  *See* SAC ¶¶ 48 ("It does not appear that
7  Apple made any effort to comply with the procedure and justifications for the RSU Adjustment
8  Policy—which requires a signed agreement by the employee—in connection with its 2019
9  decision to award zero RSUs to Plaintiff"); 25 ("Other than in 2019, Plaintiff received RSU
10 awards consistent with this policy and practice. As a measure of this excellence, Plaintiff has been
11 awarded RSUs along with these reviews in every year except 2019"); 43 ("Plaintiff reported that it
12 was the first time in 11 years that his stock award was not commensurate with his professional
13 achievement").  Shruhan's opposition confirms his claims stem from Apple's failure to award
14 RSUs in 2019.  Opp. 5 ("In 2019, Apple failed to award an amount of RSU commensurate with
15 Plaintiff's performance, consistent with its policies and practices").

16 Thus, Shruhan's allegations that the 2019 Refresh Grant promised that Apple would
17 recover any unvested RSUs pursuant to the RSU Adjustment Policy is inconsistent with his
18 allegation that he was not granted a Refresh Grant in 2019.  Having received no RSU grant in
19 2019, Shruhan has not plausibly alleged that he was a party to any 2019 Refresh Grant agreement
20 such that the RSU Adjustment Policy contained within it would apply to Apple's purported failure
21 to award RSUs in 2019.

22 The Court finds that Shruhan has not stated a plausible breach of contract theory based on
23 the "RSU Adjustment Policy" and therefore GRANTS Apple's motion to dismiss Shruhan's
24 claims arising from breach of the "RSU Adjustment Policy."  Having had the opportunity to
25 correct this deficiency and failing to do so a second time, the Court will not grant further leave to
26 amend.  *See Shrem v. Sw. Airlines Co.*, No. 15-CV-04567-HSG, 2017 WL 1478624, at *3 (N.D.
27 Cal. Apr. 25, 2017), aff'd, 747 F. App'x 629 (9th Cir. 2019) (granting motion to dismiss with

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
10

prejudice where court "previously [gave] Plaintiffs the opportunity to amend their complaint").

## B. Whether the SAC Sufficiently Alleges Breach

Having found that Shruhan has sufficiently plead the existence of the 2019 Guidelines as a contract, the Court next assesses whether Shruhan has sufficiently alleged a breach of the 2019 Guidelines. Shruhan alleges that Apple breached the 2019 Guidelines, which purportedly required a minimum grant of $7,000, "by failing to award any RSUs to Mr. Shruhan." SAC ¶ 31. Apple argues that Shruhan's "failure to plead any terms of the supposed promise and the breach doom this claim," because it "remains uncertain to whom Apple allegedly promised a minimum grant recommendation of $7,000 RSUs, what the terms of any such award were, and Shruhan's entitlement to any such RSU recommendations consistent with those terms." Reply 7.

The Court is unpersuaded by Apple's arguments. Shruhan has alleged the terms of the supposed promise: that Apple was required to grant Shruhan a minimum of $7,000 in refresh RSUs. SAC ¶ 31. Based on the 2019 Guidelines, grants are given to "retain key employees" in lead positions, and Apple HR issues a bracket for managers to guide their determination of RSU awards based on performance, with higher performers to be awarded RSUs at the higher end of the bracket, and lower performers at the lower end, etc. *Id.* ¶ 24. Shruhan further alleges that the 2019 Guidelines and promises therein applied to him. *Id.* ¶ 31. By failing to award an RSU grant consistent with the 2019 Guidelines, Shruhan alleges that Apple breached the 2019 Guidelines. *Id.*. This is sufficient to plead a breach of the 2019 Guidelines. *See Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *2 (N.D. Cal. June 1, 2016) (breach of contract claim sufficiently plead where plaintiffs identified "the specific provision of the contract that defendant allegedly breached").

Accordingly, the Court DENIES Apple's motion to dismiss Shruhan's claims arising from breach of the "2019 Guidelines."

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
11

IV. **CONCLUSION**

For the foregoing reasons, Apple's motion is GRANTED IN PART and DENIED IN PART. The Court will DISMISS WITH PREJUDICE Plaintiff's claims arising from breach of the "RSU Adjustment Policy."

Apple's motion is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: April 10, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 22-cv-05498-EJD
ORDER ON APPLE'S MOTION TO DISMISS
12